UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID MCCOY AND AMY MCCOY,
    Plaintiffs,
v.
EAST COAST AERO CLUB, INC., PLANE NONSENSE, MARK HOZWARTH, TIM GRESLA, MICHAEL MIGNOSA, KEN MURPHY, JOHN NUTT, AND NEW ENGLAND AERONAUTICS, INC.
    Defendants.

Case No.: 1:24-cv-13172-DJC

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR HEARING

## I.    INTRODUCTION

Plaintiffs seek to remand this case to state court, arguing that the claims arise under state law and do not implicate federal jurisdiction. However, removal to this Court was proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), as Plaintiff's claims necessarily implicate substantial federal questions, including the regulation of aircraft noise and air pollution under federal law, and are preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713, the Federal Aviation Act of 1958, as amended (FAA), 49 U.S.C. § 40101 *et seq* ("FAAct"), Federal Aviation Regulations (FAR's), 14 CFR § 1 *et seq*., and the Clean Air Act, 42 U.S.C. § 4901 ("CAA");  42 U.S.C. § 7401 *et seq*.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove a case from state court to federal court if the case could have been originally filed in federal court. Federal question jurisdiction under 28 U.S.C. § 1331

1

exists where the plaintiff's claims "arise under" federal law. Even if a claim is pleaded as a state law cause of action, federal jurisdiction exists where the state law claim necessarily raises a substantial and disputed federal issue. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

### III.    ALLEGATIONS AND CLAIMS

Plaintiffs have filed a four (4) count complaint against eight (8) Defendants. All the claims are premised on the same allegations regarding the Defendants' flights above Plaintiffs' properties. Plaintiffs allege, *inter alia*, that over the past three (3) years and continuing to the present Defendants have conducted "continuous, intrusive and noisy aircraft operation …at low altitudes taking place over the Plaintiffs' properties" (Complaint, ¶ 15,16). Plaintiffs further allege Defendants own and/or operate aircraft using leaded aviation fuel over Plaintiffs' Property, which has exposed the Plaintiffs and their family to fuel particulate known to have healthful health effects (Id. ¶ 19). According to the Plaintiffs, the Defendants' flights last up to forty-five (45) minutes in length and cause noise inside the plaintiffs' house. (Id., ¶ 24). Plaintiffs also contend that these flights have taken place over or near above-ground oil and gasoline storage tanks, placing plaintiffs at risk of harm from an accident. (Id. ¶ 18). Plaintiffs allege that the "defendants, instructors employed by defendants, and students receiving instruction from defendants" conduct certain flight maneuvers over and near their home. (Id., ¶ 23). Plaintiffs claim that they have suffered damages because of Defendants' flight activities including use and enjoyment of their property, emotional distress and economic harm (Id., ¶ 26, 29, 34, 35, 40, 41).

### IV.    ARGUMENT

**A.  *This Court Has Jurisdiction Over This Matter Because Plaintiffs' State Law Claims Necessarily Turn on the Construction of Federal Law.***

The Supremacy Clause of the U.S. Constitution (Article VI, clause 2) provides the basis for the doctrine of federal preemption, under which "state laws that interfere with, or are contrary to, federal law"

are invalidated. Federal law can preempt state law in multiple ways. Federal law may impliedly preempt state law, but Congress also may enact legislation with language expressly preempting state law, as it did in the CAA. The Supreme Court has emphasized that, regardless of the type of preemption at issue, Congress's intent is the "ultimate touchstone" of a statute's preemptive effect. In evaluating Congress's preemptive intent, courts look primarily to the statutory text itself.

Plaintiffs' claims are based on allegations of excessive aircraft noise, pollution, and improper aircraft operations, including operations during flight training, which necessarily implicates the Federal Aviation Act, applicable Federal Aviation Regulations, and the Clean Air Act. The FAA has exclusive authority over airspace management, aircraft certification, aircraft routes, flight instruction, and noise abatement regulations. In examining the allegations which are properly raised in a well-pleaded complaint, the court must determine whether the substance of those allegations raises a federal question. See *Taylor v. Anderson,* 234 U.S. 74, 75-76 (1914).

While federal courts have subject matter jurisdiction over claims which are created by a federal statute, the Supreme Court has also recognized that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 9 (1982). As stated recently by the Sixth Circuit, "[the Supreme Court] clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interests is raised by a complaint framed in the terms of state law, and if the resolution of that federal question is necessary to the resolution of the state law claim." *Long v. Bando Mfg. Of America, Inc.,* 201 F. 3d. 754, 759 (6th Cir. 2000).

Here it is clear that the allegations of Plaintiffs' Complaint raise substantial questions of federal law because it is obvious that the Plaintiffs seek damages arising solely from the in-flight operation of an aircraft. Although styled as state law claims for nuisance, Plaintiffs' claims necessarily arise out of federal law because the federal statutory and regulatory scheme regarding aircraft operations and aviation completely

occupies the field regarding noise, pollution, flight training, and dangerous flights.  See *Bryski v. City of Chicago*, 499 N.E. 2d. 152, 167 (App. Ct. 2d Dist. 1986); *Aircraft Owners & Pilots Ass'n v. Port Authority of New York & New Jersey*, 305 F. Supp. 2d 136 (E.D.N.Y. 2004) (Local airport restrictions on emissions and noise were preempted by federal law, particularly the Clean Air Act and the FAA's Authority).

Plaintiffs cannot prevent removal to federal court by disguising a claim that turns on the construction of federal law as a state common law claim.  See *Kingsley v. Lania,* 221 F. Supp. 2d 93, 95-96 (D. Mass. 2002); *16 Moore's Federal Practice,* § 107.14 [4][b].  Even if a Plaintiff asserts only a state law remedy, a Defendant can still remove the action from state court based on federal preemption.  See *Kingsley,* 221 F. Supp. 2d at 95-96.

In examining the allegations which are properly raised in a well-pleaded complaint, the court must determine whether the substance of those allegations raise a federal question.  See *Taylor v. Anderson,* 234 U.S. 74, 75-76 (1914).  The Supreme Court has also recognized that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 9 (1982).

The Second Circuit has addressed the issue of field preemption in the field of aviation safety. *Tweed-New Haven Airport Auth. v. Tong,* 930 F.3d 65, 73 (2nd Cir. 2019). ("The FAAct "was enacted to create a uniform and exclusive system of federal regulation in the field of air safety . . . . [It] was passed by Congress for the purpose of centralizing in a single authority . . . the power to frame rules for the safe and efficient use of the nation's airspace." *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224-25 (2d Cir. 2008) (internal quotation marks omitted). With these objectives in mind, we have held that the FAAct impliedly preempts the entire "field of air safety." *Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210-11 (2d Cir. 2011). Accordingly, "[s]tate laws that conflict with the FAA[ct] or sufficiently interfere with federal regulation of air safety are . . . preempted." *Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16, 19 (2d Cir. 2018) (summary order)."

### B. State Law Claims Predicated on Aircraft Noise Generated During Flight by Certificated Aircraft are Preempted by Federal Law.

Congress has given exclusive authority to the FAA to regulate noise levels pursuant to the Noise Control Act, 49 U.S.C. § 44715. Courts have consistently held that claims seeking to regulate aircraft noise through state tort law are preempted. See *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 783 (6th Cir. 1996) (holding that aircraft noise regulation is exclusively within the federal domain.

Each of the aircraft owned or operated by the defendants meets the airworthiness standards set by the Federal Aviation Administration, including compliance with the noise standards applied by the FAA as part of the rigorous certification process.  Ground and flight tests overseen by the FAA have demonstrated compliance with applicable regulations, 14 CFR § 36 et seq, entitled, "Noise Standards: Aircraft Type and Airworthiness Certification."  Pursuant to 49 U.S.C. 44715, the noise levels in this part of the Code of Federal Regulations have been determined to be as low as is economically reasonable, technologically practicable, and appropriate to the type of aircraft to which they apply. Because the FAA has addressed noise levels as part of its airworthiness determination, States are preempted from applying any conflicting airworthiness standards, including conflicting aircraft noise limitations. Here, the FAA has specifically addressed noise levels of the certificated aircraft in the East Coast Aero Club fleet and specifically found those levels to be "appropriate to the type of aircraft."

Furthermore, the recently enacted FAA Reauthorization Act as amended, 49 U.S.C. §44112(b), specifically precludes claims against lessors and owners for damages when others are in actual possession or operational control of the aircraft.  The relevant section reads as follows:

> *(b) LIABILITY.—A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage only when a civil aircraft, aircraft engine, or propeller is in the **actual possession or operational control** of he lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of—*
> *(1) the aircraft, engine, or propeller; or*
> *(2) the flight of, or an object falling from, the aircraft, engine, or propeller.*

Federal Jurisdiction Promotes Uniformity in Aviation Law.  Allowing state courts to adjudicate aircraft noise claims would disrupt the uniform regulatory framework established by federal law. The

5

Supreme Court has emphasized the need for uniformity in aviation regulation. See *MCI Telecoms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231 n.4 (1994). Retaining federal jurisdiction ensures consistency in the application of aviation noise and air pollution standards and prevents a patchwork of conflicting state laws. Insofar as the state law claims are based, in part, on noise generated by aircraft, state law claims are necessarily preempted and state courts lack jurisdiction to address any claims related to noise generated by aircraft during normal operations.

Courts have recognized that claims challenging aircraft noise necessarily involve federal law. See *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 633 (1973) (holding that federal law preempts state regulation of aircraft noise). The Act and the FAA regulations promulgated under it regarding the regulation of aircraft flight and noise evidence that Congress intended that federal statute and regulations preempt the entire field of aircraft noise control. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633-34 (1973). The Supreme Court has stated,

> Federal control [over aviation] is intensive and exclusive. Planes do not wonder about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under intricate system of federal command. The moment a ship taxies onto a runway, it is caught up in an elaborate and detailed system of controls.

Id., (internal quotations omitted). Although "[c]ontrol of noise is of course deep seeded in the police power of the States", the Court held that the federal noise control statute left no room for local control over the noise emitted from aircrafts. Id., at 638. Allowing local control over aircraft noise would impede the federal scheme for air traffic. Id., at 628 ("the aircraft and its noise are indivisible …"); *See State v. Sherbrooke,* 633 N.W. 2d 856, 862 (Minn. 2001).

The Court's holding in *Burbank* makes it clear that the federal government's extensive statutory and regulatory scheme completely occupies the field of aircraft flight and noise control precluding local regulation of the field. As explained by one court:

> The court in *Burbank* focused upon the fact that the Federal Aviation Act, the Attendant Regulations, a legislative history of the Act, the Noise Control Act and the EPA clearly identified noise regulation as a field fully regulated by the federal government. The combination of these factors made it obvious that with regard to noise control, Congress intended to occupy the field of regulation. Based on this evidence of pervasiveness, the court in *Burbank* determined that aircraft noise was so comprehensively and strictly regulated by the federal government that it precluded enforcement of state and local laws on the same subject.

*Gustafson,* 76 F. 3d. at 784 (internal citations omitted).

Because of the pervasive federal statutory and regulatory control over in-flight activities of aircraft, such nuisance claims are actionable only where a Defendant has violated the applicable federal regulations. See *Luedike v. County of Milwaukee*, 521 F. 2d 387, 391 (7th Cir. 1975)("Since the federal laws and regulations have preempted local control of aircraft flights, *Burbank, supra,* the Defendants may not, to the extent they comply with such federal laws and regulations, be charged with negligence or creating a nuisance."); *Bryski,* 499 N.E. 2d at 167 (dismissing Plaintiffs' claims for trespass and nuisance based on in-flight activities of aircraft because Plaintiffs had not alleged that the Defendants had violated any federal regulations).

Because Plaintiffs' nuisance claims necessarily turn on a determination of whether Defendants violated federal regulations, their claims arise under federal law so as to confer this court with jurisdiction over this matter. See *City of Tipp City v. City of Dayton*, 204 F.R.D. 388, 395-96 (S.D. Ohio 2001). In *City of Tipp,* one municipality sued another asserting state law claims for nuisance arising from flights departing from an airport owned by the Defendant. Id., at 389. The Defendant city removed the matter to federal court asserting that the Plaintiffs' claim for nuisance was preempted completely by federal law regarding the regulation of air traffic. Id., at 390. The Plaintiff moved to remand the action back to state court arguing that it had only asserted state common law claims. Id. The court correctly noted that, contrary to Defendants assertions, the Plaintiff's nuisance claim was not completely preempted by federal law; the Plaintiff could still pursue such a cause of action. Id., at 391-94. However, the court denied the motion to remand. Id., at 395. The court determined that Plaintiff's common law claims necessarily raised a

7

substantial question of federal law – specifically, the court concluded that Plaintiff's claims required the court to determine whether the Defendant had properly implemented two Tower Orders issued by the FAA which were specifically designed to limit noise and other pollution.  Id.  The court assumed that the Tower Orders had the force of FAA regulations and, accordingly, concluded that the plaintiff's complaint for nuisance necessarily implicated a federal question because the Plaintiff's nuisance claim was actionable only if the Defendant has violated the FAA Tower Orders.  Id.  The court stated that "in light of the federal government's extensive control over aircraft noise regulation, *Burbank*, supra, the federal interests in this case is substantial.  The court, therefore, concluded that a *prima facie* showing has been made that Plaintiffs' nuisance claim, although stated in terms of state law, 'arises under' federal law, and that this court has subject jurisdiction over same." Id. at 396.

Similarly, an examination of Plaintiffs' Complaint demonstrates that this Court has subject matter jurisdiction over Plaintiffs' claims because they necessarily arise under federal law.  Plaintiffs base their claims solely on the in-flight activities of aircraft.  Plaintiffs' claims are grounded upon the Defendants' failure to comply with FAA regulations of aircraft operations, noise generated by engines and propellers subject to certification by the FAA and alleged pollution which is also governed by federal law. Plaintiffs state that Defendants' in-flight activities are "continuous, intrusive and noisy" (Complaint, ¶ 16).  14 CFR §§ 36.1-36.1583 and App. A-J provides extensive regulations regarding aircraft noise.  Because Plaintiffs' claims require determination as to whether the Defendants complied with these federal regulations which touch upon a substantial federal interest, See *City of Tipp,* 204 F.R.D. at 395-96, this Court has subject matter jurisdiction over Plaintiffs' claims and state court does not.

### C. *State Law Claims Predicated on Aircraft Emissions Generated During Flight by Certificated Aircraft are Preempted by Federal Law.*

The Environmental Protection Agency regulates aircraft emissions under the Clean Air Act ("CAA"), setting standards for pollutants like $CO_2$, hydrocarbons, carbon monoxide, nitrogen oxides, and particulate matter, with the FAA administering certification requirements to ensure compliance. See 42 U.S.C. §7571;

CAA section 231(a)(2)(A).  The CAA (42 U.S.C. § 7573) expressly preempts Plaintiffs' claims. That statute provides:

> *No State or political subdivision thereof may adopt <u>or attempt to enforce any standard</u> respecting emissions of any air pollutant from any aircraft or engine thereof unless such standard is identical to a standard applicable to such aircraft under this part. 42 U.S.C. § 7573 (*emphasis added*)*

The Secretary of Transportation is mandated, by authority of Section 232 of the CAA, "to prescribe regulations to insure compliance with all standards prescribed by the Administrator" (of the Environmental Protection Agency). The EPA, similarly, gets its authority from Section 231 of the Clean Air Act (CAA) that mandates EPA to determine "the extent to which such emissions affect air quality in air quality regions throughout the United States," and "the technological feasibility of controlling such emissions." The EPA sets the emissions standards, and FAA sets and administers the certification requirements for aircraft and engines to demonstrate compliance with the emissions standards. In addition, Section 233 of the CAA prohibits states and local communities from setting their own standards.

In *California v. Navy*, 624 F.2d 885, 888 (9th Cir. 1980), a case about aircraft engine pollution—the Ninth Circuit adopted a test for Section 233 preemption. 624 F.2d at 888. In that case, the State of California tried to apply its pollution regulations to the Navy's aircraft engine testing, which happened in the Navy's "test cells" <u>on the ground</u>. Id. at 886. The Navy argued that California could not regulate this pollution because Section 233 of the CAA preempts regulation of air pollutants from aircraft and aircraft engines. See id. at 887. The Ninth Circuit rejected the Navy's argument and held that state pollution regulations may apply to aircraft engine emissions in certain circumstances consistent with Section 233's preemption clause. Specifically, it concluded: [W]e hold that emissions from aircraft engine <u>test cells</u> are subject to state pollution regulations <u>if those regulations can be met without affecting the engine</u>.

If the state regulations cannot be met without effect upon the engine, then they become a regulation of the engine itself and are preempted under [Section] 233. The test developed by the district court supports

9

preemption in this case because each of the aircraft identified by the plaintiffs meets the airworthiness standards set by the Federal Aviation Administration, including compliance with the applicable EPA standards. The engines have already been tested on the ground and been approved as "economically reasonable, <u>technologically practicable and appropriate to the type of aircraft to which they apply</u>." 49 U.S.C. 44715(b). In order to obtain certification each aircraft engine manufacturer must design and manufacture its engines in compliance with the FAA standards. State courts lack jurisdiction to alter the FAA determinations.

### D. State Law Claims Predicated on Aircraft Operations are Preempted by Federal Law

The Federal Aviation Act, 49 U.S.C. § 40101-419101 [formerly 49 U.S.C. § 1301-1557] ('the Act") provides that the Federal Aviation Administration ("FAA") has exclusive authority in regulating the airspace over the United States, including the regulation of flight patterns and aircraft noise. Section 40103(b)(1) reads in relevant part:

> The administrator of the Federal Aviation Administration shall develop plans and policies for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft for the efficient use of airspace.

49 U.S.C. § 40103(b)(1). Section 40103(b)(2) further provides that:

> The administrator shall prescribe air traffic regulations on the flight of aircraft (including regulations of safe altitudes for
>
> (A) Navigating, protecting, and identifying aircraft;
> (B) Protecting individuals and property on the ground;
> (C) Using the navigable air space efficiently; and
> (D) Preventing collision between aircrafts, between aircrafts an land or water vehicles, and between aircrafts and airborne objects.

49 U.S.C. § 40103(b)(2). Essentially, under the Act, the United States, through the FAA, exercises sovereign regulations of air space over the United States and the regulation of aircrafts in flight. *See Gustafson v. City of Lake Angelus,* 76 F.3d. 778, 783 (6th Cir. 1998).

The Second Circuit recently addressed the issue of federal preemption under the Federal Aviation

10

Act in the matter of *Tweed-New Haven Airport Authority vs. William Tong,* 930 F.3d. 65 (2019). In *Tweed,* the Tweed-New Haven Airport Authority sought to expand its primary runway which was limited in length by a Connecticut Statute. The Second Circuit held that the runway statute falls within the scope of federal preemption under the FAA Act. "The key question is thus at what point the state regulation sufficiently interferes with the Federal Regulation that it should be preempted? Id at 74 Since the state- based claims at issue here clearly interfere with Federal Regulation, these state- based claims must be preempted.

The FAA has promulgated comprehensive and extensive regulations covering general operating and flight rules (14 CFR Part 91), certification of pilots, flight instructors, and ground instructors (CFR Part 61, and pilot schools (14 CFR Part 141).

### E. The Authorities Cited by Plaintiffs Are Inapposite.

Plaintiff's arguments are misplaced. The well pleaded complaint rule does not excuse the plaintiffs from alleging the standard violated by the defendants which gave rise to their claim. Here, there is absence proof that Defendants violated FAA regulations. Plaintiffs cannot state a claim for common law nuisance without addressing the lawfulness of Defendants' in-flight activities. In examining the allegations which are properly raised in a well-pleaded complaint, the court must determine whether the substance of those allegations raise a federal question. See *Taylor v. Anderson,* 234 U.S. 74, 75-76 (1914). The Supreme Court has also recognized that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 9 (1982). Plaintiffs ignore this fundamental requirement.

By specifically alleging claims based upon aircraft operations while airborne in federally controlled airspace proof of a violation of federal law is a necessary element of any cause of action the plaintiffs might assert. While the plaintiffs claim to have been injured by noise, emissions of pollutants by aircraft engines, and low flights, plaintiffs do not allege that any defendant violated any Massachusetts statute, rule, or regulation. Plaintiffs do not allege that the defendants violated M.G.L. c. 90, nor could such allegations be made in good faith without first finding a violation of an applicable FAR promulgated pursuant to FAAct.

11

Aircraft noise, emissions, and flight operations are governed solely and exclusively by federal law.

As noted above, the Second Circuit has determined that claims involving aviation safety preempt state law. *Tweed-New Haven Airport Auth. v. Tong,* 930 F.3d 65, 73 (2nd Cir. 2019). ("The FAAct "was enacted to create a uniform and exclusive system of federal regulation in the field of air safety . . . . [It] was passed by Congress for the purpose of centralizing in a single authority . . . the power to frame rules for the safe and efficient use of the nation's airspace." *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224-25 (2d Cir. 2008) (internal quotation marks omitted). With these objectives in mind, we have held that the FAAct impliedly preempts the entire "field of air safety." *Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210-11 (2d Cir. 2011). Accordingly, "[s]tate laws that conflict with the FAA[ct] or sufficiently interfere with federal regulation of air safety are . . . preempted." *Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16, 19 (2d Cir. 2018) (summary order)."

Massachusetts aeronautic laws do not supersede federal statutes and regulations regarding aircraft flight, noise, and emissions. A cursory examination of the statutes cited by Plaintiffs reveals that these statutes pertain to providing for the physical safety of individuals and structures <u>on the ground</u>, not as to in-flight operations, noise, and environmental claims based upon emissions of fuel regulated by the FAA.

Plaintiffs do not contend that Defendants caused physical harm to themselves or their property or that Defendants caused an aviation accident. Moreover, although the legislature created an aeronautics commission, the commission's rule-making authority is limited. The commission is authorized to issue rules and regulations regarding aeronautics; "provided, however, that such rules and regulations shall not be inconsistent with, or contrary to, any act of the Congress of the United States relating to aeronautics or any regulations promulgated, or standards established pursuant thereto." G.L. c. 90, § 39. Accordingly, because the FAA has issued comprehensive regulations regarding aircraft certification, in-flight operations, noise, and emissions, any Massachusetts regulations in these areas are preempted to the extent that they conflict. See *Burbank*, 411 U.S. at 633-34.

Relying on *Kingsley v. Lania*, 221 F. Supp. 2d 93 (D. Mass. 2002) and *Stone v. Frontier Airlines,*

*Inc.,* 256 F. Supp. 2d 28, (D. Mass. 2002), Plaintiffs' second argument contends that the FAA regulations cannot create removal jurisdiction because they are only indirectly related to Plaintiffs' claims. These cases are distinguishable. In *Kingsley,* the court was presented with claims arising from the <u>on-ground</u> security screening process at an airport. *Kingsley,* 221 F. Supp. 2d at 94-95. Although the FAA had issued regulations regarding security checkpoints the court concluded that there was no removal jurisdiction because it was unclear whether Congress intended federal law to occupy the entire field of law in that area and, accordingly, the FAA regulations merely provided a defense to Plaintiffs action. *Id.,* at 97-98. Similarly, in *Stone* the Court was dealing with claims that only tangentially implicated FAA regulations. In *Stone,* the Plaintiff brought negligence claims against an airline for its failure to have a defibrillator aboard its plane. *Stone,* 256 F. Supp. 2d at 33. The court concluded that Congress did not intend for federal laws and regulations to occupy the entire field regarding conduct and safety measures <u>on board</u> an airplane because nothing the federal statute or regulations indicated a Congressional intent to establish a standard of care for the provisions of in-flight medical care. *Id.,* at 44-45. Accordingly, Plaintiffs' state law tort claims were not preempted. *Id.,* at 47.

Unlike the cased cited by Plaintiffs, this matter implicates an area of aviation for which Congress has evidenced a clear intent that federal law should solely control – the certification of aircraft, flight operations, noise, and emissions of aircraft. See *Burbank,* 411 U.S. at 633-34. Subject matter jurisdiction exists because, unlike *Kingsley* and *Stone,* the FAA regulations in this matter are not merely a defense to Plaintiffs' claims; rather, Plaintiffs' nuisance claims are contingent upon a showing that the Defendants violated the FAA regulations. See *City of Tipp,* 204 F.R.D. at 396; *Bryski,* 499 N.E. 2d at 167.

## **CONCLUSION**

For all the foregoing reasons, the court should deny Plaintiffs' Motion to Remand and allow this matter to proceed in Federal Court.

## REQUEST FOR ORAL ARGUMENT

Because this matter raises significant issues regarding federal jurisdiction, the Defendants in accordance with Local Rule 7.1(E) request a hearing date for oral argument.

Respectfully submitted,
New England Aeronautics, Inc.
& John Nutt
By Their Attorneys,

Dated: March 20, 2025

*/s/ Louis J. Muggeo*
Louis J. Muggeo, Esq.
LOUIS J. MUGGEO & ASSOCIATES
133 Washington Street
Salem, MA  01970
(978) 741-1177
BBO #359220
e-mail:  lmuggeo@ljmassoc.com

Defendants,
East Coast Aero Club, Inc., Plane Nonsense, Mark Holzwarth, Tim Gresla, Michael Mignosa & Ken Murphy
By Their Attorneys

*/s/ Kevin C. Cain, Esq.*
Kevin C. Cain, Esq.
kcain@cainlawoffices.com
CAIN LAW OFFICES
92 State Street, 7th Floor
Boston, MA  02109
Tel:    617-651-0102
Cell:   617-803-5416

## CERTIFICATE OF SERVICE

I hereby certify under the pains and penalties of perjury that I served a copy of the foregoing pleading on all parties by electronic service to counsel of record listed below on March 20, 2025 to:

| | |
|---|---|
| Dennis R. Brown, Esq. | Kevin C. Cain, Esq. |
| dennis@drblaw.com | kcain@cainlawoffices.com |
| Dennis R. Brown, P.C. | CAIN LAW OFFICES |
| 869 Concord Street | 92 State Street – 7th Floor |
| Framingham, MA 01701 | Boston, MA  02109 |
| Tel:  508-879-6300 | Tel:  617-651-0102 |

*/s/ Louis J. Muggeo*
Louis J. Muggeo, Esq.